[Crim. No. 2431. In Bank.—December 7, 1922.]

THE PEOPLE, Respondent, v. T. MARUI, Appellant.

[1] CRIMINAL LAW—MURDER—SUFFICIENCY OF EVIDENCE—ABSENCE OF ERROR.—In . this prosecution for murder, the verdict calling for the death penalty is amply supported by the evidence and the record fails to disclose any error demanding consideration on appeal.

APPEAL from a judgment of the Superior Court of Monterey County and from an order denying a new trial. J. A. Bardin, Judge. Affirmed.

The facts are stated in the opinion of the court.

C. F. Lacey and J. Sherman Woolf for Appellant.

U. S. Webb, Attorney-General, for Respondent.

LAWLOR, J.—An information was filed against appellant, T. Marui, in the superior court of the county of Monterey charging him with the crime of murder. He pleaded not guilty to the charge and upon the trial the jury rendered a verdict of murder in the first degree, calling for the death penalty. In due course a motion for a new trial was interposed in his behalf and denied, whereupon judgment of death was pronounced upon him. He has appealed from the order denying his motion for a new trial and from the judgment of conviction. We have made a careful examination of the record with the view of determining whether there is any reason why the judgment of death should not be affirmed.

It appears from the record that at about 2:30 P. M. on October 28, 1921, in the city of Monterey, appellant shot Tsunematsu Shintani and his wife. The wife apparently was instantly killed and the husband lingered for about two hours, when he died from the effect of the bullet wounds. Hemorrhage of the liver and kidneys was given as the cause of his death. This prosecution is alone for the killing of the husband.

The principals to the tragedy and many of the witnesses are Japanese. The testimony of the Japanese witnesses was taken through the medium of Japanese interpreters and because of this some difficulty has been experienced in following the testimony, as it is not always clear whether the interpreter simply repeated the declarations of the witnesses or gave his own understanding of what the witnesses meant to convey. We think, however, the evidence we shall touch upon is correctly stated, is fairly reflective of the record as a whole and is sufficient for the purposes of the appeal.

The tragedy occurred at the home of the Shintanis, which for the preceding ten months, had been on Foam Street in the city of Monterey. Appellant had been a lodger in the Shintani household for some three years, but three or four weeks before the fatal meeting changed his abode and took lodgings in the residence of Mrs. Merrill at No. 525 Lake Street, in the same city. Appellant was forty-three years of age and Shintani two years his senior. The slain couple had four children.

Two of the principal witnesses were Mrs. Mitzi Natsuda and Mrs. Max Kozeni, the former residing on the opposite side of Foam Street from the Shintani home and the latter in the adjoining house nearer Pacific Grove. They were friends of Shintani and his wife and acquaintances of appellant.

Apparently the killing was the result of an incident which had occurred about three weeks before. It appears that Mrs. Shintani requested appellant to purchase for her at Goldstein's store a pair of corduroy pants for one of her boys. The article was secured and appellant reported that it cost $2.25, whereupon Mrs. Shintani said to appellant she thought he paid too much and asked him if he had the bill. It seems that some time before she bought a similar article for another of her boys at the same store at a less figure. Appellant appeared to regard the incident in the light of an insult—that his honor and integrity had been questioned—and thereafter that thought evidently possessed him, finally culminating in the sacrifice of the two lives. The evidence indicates that he was far more impressed with the incident than were the Shintanis, for while he seemed to be obsessed by it, making it the subject of every conversation when they met, referring to it on all occasions and expressing concern as to its effect on his standing in the Japanese community,

they apparently tried to convince him his character had not been impugned—in short, their position seems to have been that the price was spoken of only because of Mrs. Shintani's purchase on the previous occasion. It might have been inferred that appellant changed his abode on account of the trouble.

According to the evidence, during the forenoon of the day of the shooting, appellant called on Mrs. Natsuda. He remained for a while, but no allusion was made to the subject which in the light of the sequel must have been uppermost in his mind. Shortly before 2:30 Mrs. Natsuda called at the home of the Shintanis and found them, together with appellant, in the kitchen. Two of the four children were playing on the floor. Appellant was dwelling on the "insult" which he insisted the Shintanis had offered him. Apparently they were disinclined to pursue the matter with him, for Mrs. Shintani occupied herself reading the Japanese newspaper and at intervals the husband paid some attention to the children. Mrs. Natsuda took no especial interest in the conversation between the parties. We quote from her testimony: "Q. Did you hear any conversation between those three after you seated yourself in the kitchen? A. Talking about those pants. Q. What pants? What did you hear about pants? A. Talking about those pants or trousers and regarding about the price. Mr. and Mrs. Shintani asked Marui about the bill, where is it? Q. What else was said? A. Then when asking about this bill Marui is very much dissatisfied about it and Marui demanded Shintani for a written excuse and not insulting him like that again. . . . Marui asked Mr. and Mrs. Shintani to apologize to writing on the form of a letter to a form of apology which will not happen again, something like that. He is very much dissatisfied. Q. An apology for what? A. Well, that is he purchased the goods for them and they have to trust what he done for it and as they are asking the price and they say it is kind of insulting and therefore Marui asking to Mr. and Mrs. Shintani for apologies. Q. For an apology in writing? A. In writing. Q. What did Mr. or Mrs. Shintani say—if anything—when the defendant asked for an apology in writing? A. Mr. and Mrs. Shintani say to Marui if it is very much a necessity to do so well they might well do it and a few conversations between them and then Marui pulled out a pistol. . . . Q. Did you hear the word "thief"

or "robber" used by anybody? A. Well, Marui said to the Shintanis, he says: 'You think I am a thief?' But Mrs. Shintani told Marui 'I don't think any minute you are a thief.' That is Marui said so. . . . Q. What did she say? A. Sorry asking for that bill,—it isn't meaning to doubt you or anything like that so apologize you know Mrs. Shintani is once in a while. Q. She said that several times, didn't she? A. Once or twice."

Evidently appellant had come prepared to force the issue, for Mrs. Natsuda had been present but ten or fifteen minutes when he arose and drew a pistol from his right-hand coat pocket. Neither of the Shintanis was armed. When Mrs. Natsuda observed appellant's movement she ran from the kitchen on to the back porch calling to Mrs. Kozeni for help. As she reached the porch she heard the sound of two shots in quick succession. She left Mrs. Kozeni, who had appeared in response to her cries, and proceeded to the sidewalk in front of the house. About four minutes later appellant came up from behind from the other side of Foam Street and said to her: "If you spread any of this news, I will kill you also." He continued on his way down the street toward old Monterey and disappeared from view. She then re-entered the house by the front door.

Mrs. Kozeni was the first to reach the Shintani house. She made her way from her yard into the kitchen, where she found Mrs. Shintani lying on the floor dead. She saw Mr. Shintani lying on the floor of the storeroom, his face turned upward. He was wounded in the body and head. Appellant was standing in the storeroom reloading his pistol. He said to her: "If you don't leave, I will shoot you." She immediately started for the door, holding her hands above her head as she took her departure. Mr. Shintani had asked her to get a doctor. She summoned Dr. H. S. Hoyt and on his arrival the wounded man was removed to a hospital where, as already stated, he died in about two hours.

It was shown that appellant, about September 15, had purchased from a second-hand store the 38-caliber revolver with which he killed the couple; that three or four days before the shooting, in a conversation with one O. Enokida, he had declared, referring to the Shintanis, that he would shoot them and that he had said to another man about three weeks before the tragedy that he had gone to the Shintani house

intending to kill them both but that as Mrs. Shintani was there alone he did not carry his purpose into effect. This was communicated to the Shintanis and Mrs. Kozeni by Enokida.

It further appeared in evidence that appellant was taken into custody at Tarpy Flat, about five miles from Monterey on the Salinas road, on November 1st. He was detected hiding in the brush near a knoll, the neighbors having noticed that someone came in sight to get water. On being apprehended he inquired if Mr. Shintani was dead and when told that both had died, he said: "I want to shoot myself." Appellant stated that when he was hiding he dreamed the Shintanis were there with him, or that he saw them in a dream. He identified a box of cartridges which had been found in his room as having been purchased by him from the second-hand store; also a 38-caliber revolver in two parts, containing two empty shells, which was found in a closet between two rooms in some shavings in the Shintani house. This evidence tended to connect him up with the revolver and cartridges, which were used in the killing. Appellant made a statement, which was taken down in shorthand, and reduced to writing, to the effect that he called on the Shintanis in order to have a final straightening up of the difficulty and that if that could not be done he was determined to fight with them; that he had a revolver in his pocket when he went to the house; that they talked for a while when he got up from the table and drew a gun; that Shintani came toward him and, putting his hand on appellant's shoulder, said: "Wait, wait! Don't do that way; we can fix up everything and settle trouble." Whereupon, he shot Shintani. The latter took hold of appellant's right arm and followed him into the storeroom, where he fell. Appellant further stated that he then tried to shoot himself, to commit suicide, but the gun would not work; that on going into the kitchen he saw Mrs. Shintani lying on the floor; that his mind was clear up to the time of the shooting and that he had been "suspicious" of Shintani. It was testified appellant was sober.

[1] From the foregoing summary it is plain that the verdict rendered is amply supported by the evidence. The case went to the jury on the testimony of the prosecution alone. For three weeks or more appellant had dwelt on the asserted "insult" to his honor, which undoubtedly furnished the

motive for the murder. No attempt was made to go into the details of the purchase of the trousers, whether the price stated was the price paid or whether there was any basis in fact for the comments made by the Shintanis in that behalf. It appears certain from the evidence that appellant felt he had been disgraced by the action of the Shintanis and that as they did not relieve him from the imputation which he felt had been put upon him he resolved to kill them and carried the intention into effect.

There can be no question that the specific elements of deliberation and premeditation in murder of the first degree are fully established. His conduct in bringing up the subject at every opportunity following the pants incident, purchasing a revolver and cartridges, his declaration that on an earlier occasion he had formed the intent to kill and had proceeded to put it into effect but reconsidered when the wife alone was present; his antecedent threats; his going to the house armed on the day of the murder and the admissions contained in his statement made to the officers all tended to prove the deliberate and premeditated intention to take life. No question was raised on the trial as to his mental responsibility for the deed, and consciousness of guilt might be inferred from his immediate flight from the scene of the crime and his remaining in hiding until he was apprehended.

In the conduct of the trial the court appeared to realize that appellant was in a defenseless position. The rulings on the objections of counsel were marked by a great liberality in his favor and conserved the presumption of innocence. Not a single debatable question is presented thereby. The charge to the jury is a model of fairness and impartiality and in the proceedings after verdict a scrupulous regard for the rights of appellant is apparent. His counsel safeguarded his rights at every turn, and spared no proper effort to save him from the consequences of his deed and the record shows no error which demands consideration on appeal.

The judgment and order are affirmed.

Wilbur, J., Lennon, J., Waste, J., Sloane, J., Shurtleff, J., and Shaw, C. J., concurred.